UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
                                            )
SIERRA CLUB                                 )
85 Second St. 2nd Floor                     )
San Francisco, CA 94105,                    )
                                            )
       Plaintiff,                           )
                                            )
vs.                                         ) Civ. No.-
                                            )
GINA MCCARTHY                               )
in her Official Capacity as                 )
Administrator                               )
United States Environmental Protection Agency )
Ariel Rios Building                         )
1200 Pennsylvania Avenue, N.W.              )
Washington, DC 20460                        )
                                            )
       Defendant.                           )
_____)

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

**I.  INTRODUCTION**

1.     Plaintiff Sierra Club brings this Clean Air Act citizen suit to compel the United States Environmental Protection Agency to undertake overdue mandatory duties required by the Clean Air Act, 42 U.S.C. §§ 7401-7671q, including the failure to take final action on certain portions of Texas' state implementation plan under 42 U.S.C. § 7410(k)(2)-(4) and failure to "bump up" the Dallas/Ft. Worth area to a severe 1997 8-hour ozone nonattainment area pursuant to 42 U.S.C. §§ 7509(c)(1), (2) and 7511(b)(2)(A), (B).  Accordingly, Plaintiff SIERRA CLUB files this lawsuit against Defendant GINA MCCARTHY, in her official capacity as Administrator of the Environmental Protection Agency ("EPA"), to compel her to perform these mandatory duties.

1

## II. JURISDICTION

2.	This case is a Clean Air Act citizen suit.  Therefore, the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 7604(a) (citizen suits for failure to perform a non-discretionary duty required by the Clean Air Act).

3.	An actual controversy exists between the parties.  This case does not concern federal taxes, is not a proceeding under 11 U.S.C. §§ 505 or 1146, and does not involve the Tariff Act of 1930.  Thus, this Court has authority to order the declaratory relief requested under 28 U.S.C. § 2201.  If the Court orders declaratory relief, 28 U.S.C. § 2202 authorizes this Court to issue injunctive relief.

## III. NOTICE

4.	Sierra Club mailed to EPA by certified mail, return receipt requested, written notice of intent to sue regarding the violations alleged in this Complaint.  EPA received the written notice by no later than March 5, 2014.  More than sixty days have passed since EPA received Sierra Club's "notice of intent to sue" letter.  EPA has not remedied the violations alleged in this Complaint.  Therefore, a present and actual controversy exists.

## IV. VENUE

5.	This civil action is brought against an officer of the United States acting in her official capacity.  Also, the United States Environmental Protection Agency is headquartered in this judicial district.  Defendant Gina McCarthy officially resides in the District of Columbia.  A substantial part of the events or omissions giving rise to the claims in this case occurred in the

District of Columbia.  Accordingly, venue is proper in this Court pursuant to 28 U.S.C. § 1391(e).

## V.  PARTIES

6. Plaintiff SIERRA CLUB is a national grassroots nonprofit conservation organization formed in 1892.  Sierra Club's purpose is to explore, enjoy and protect the planet.

7. Sierra Club has over 600,000 members nationally.  Members of Sierra Club live, work, recreate, and travel throughout Texas and the Dallas-Fort Worth area and will continue to do so on a regular basis.  Ozone in the affected areas threatens, and will continue to threaten, the health and welfare of the Sierra Club's members.  According to EPA, based on exhaustive scientific review, ozone pollution causes decreased lung function, increased respiratory symptoms, emergency department visits, hospital admissions for respiratory causes, and even death. 73 Fed. Reg. 16,436 (Mar. 27, 2008). Those most at risk from ozone pollution are children; active people, *e.g.,* runners and people who do manual labor outside; people with pre-existing lung and heart diseases such as asthma; and older people. *Id.* at 16,440.  Ozone also damages vegetation, both native and commercial crops. *Id.* at 16,485-16,486.  Damage to native vegetation results in ecosystem damage, including diminished ecosystem services, that is, the life sustaining services that ecosystems provide to people for free, such as clean air, clean water and carbon sequestration. *Id.*  Sierra Club members' ability to enjoy the aesthetic qualities and recreational opportunities of the affected areas is diminished by ozone pollution.

8. EPA's failure to timely perform the mandatory duties described herein also adversely affects the Sierra Club, its staff, and members, depriving them of procedural protection and opportunities as well as information which they are entitled to under the Clean Air Act.  The

failure of EPA to perform its mandatory duties also creates uncertainty for Sierra Club's staff and members as to whether they are exposed to excessive air pollution.

9. The above injuries will continue until the Court grants the relief requested herein.

10. Defendant GINA MCCARTHY is the Administrator of the United States Environmental Protection Agency. In that role Administrator McCarthy has been charged by Congress with the duty to administer the Clean Air Act, including the mandatory duties at issue in this case.

## VI.  LEGAL BACKGROUND

11. Congress enacted the Clean Air Act to "speed up, expand, and intensify the war against air pollution in the United States with a view to assuring that the air we breathe throughout the Nation is wholesome once again." H.R.Rep. No. 1146, 91st Cong., 2d Sess. 1,1, 1970 U.S.Code Cong. & Admin. News 5356, 5356. To promote this, the Act requires EPA to set National Ambient Air Quality Standards for certain pollutants, including ozone. National Ambient Air Quality Standards establish maximum allowable concentrations in the air of these pollutants.

12. Each National Ambient Air Quality Standard must be stringent enough to protect public health and welfare. Effects on welfare include, but are not limited to, effects on soils, water, vegetation, manmade materials, wildlife, visibility (*i.e.* haze), climate, damage to property, economic impacts, and effects on personal comfort and well-being.

13. Pursuant to 42 U.S.C. § 7407(d)(1)(A), EPA designates areas that fail to meet the National Ambient Air Quality Standard for a pollutant "nonattainment" for that pollutant; EPA designates those that meet the standard "attainment." *See e.g*., *Sierra Club v. EPA*, 129 F.3d 137, 138 (D.C. Cir. 1997).

14.     States with areas designated nonattainment must submit state implementation plans showing how they plan to reduce the air pollution levels to below the National Ambient Air Quality Standard. *See South Coast Air Quality Management Dist. v. EPA*, 472 F.3d 882, 887 (D.C. Cir. 2006) (discussing ozone nonattainment requirements found in 42 U.S.C. §§ 7511-7511f that apply to areas failing to reach attainment by the 1990 Clean Air Act Amendments); *see also Sierra Club v. EPA*, 129 F. 3d at 138 ("EPA must establish . . . a schedule by which the state must submit a state implementation plan revision that complies with the requirements for nonattainment areas in order to attain the National Ambient Air Quality Standards. . .") (citation omitted).

15.     On July 18, 1997, EPA promulgated a new 8-hour ozone National Ambient Air Quality Standard. 62 Fed. Reg. 38856 (July 18, 1997).

16.     EPA, in implementing the 1997 8-hour standard, originally placed nonattainment areas into two separate categories: "subpart 1" for areas designated nonattainment under Title I, Part D, subpart 1 of the Clean Air Act, 42 U.S.C. §§ 7501-7509a, and "subpart 2" for areas designated nonattainment under Title I, Part D, subpart 2 of the Clean Air Act, 42 U.S.C §§ 7511-7511f. 69 Fed. Reg. 23858 (April 30, 2004).

17.     Nonattainment areas designated under subpart 2 were classified according to their design value at the time of the nonattainment designation. 42 U.S.C. § 7511(a)(1); *see also* 40 C.F.R. § 51.903(a) (2009). The nonattainment areas are assigned an "attainment date" by which they must attain the 1997 ozone NAAQS. Within six months of the attainment date, EPA must determine whether the nonattainment area has attained the NAAQS and publish notification of that finding. 42 U.S.C. §§ 7509(c)(1), (2) & 7511(b)(2)(A), (B). This finding is referred to as a

"bump up" because if EPA finds that the area has not attained by its attainment date, the area is bumped up to the next higher classification of ozone nonattainment areas.

18. A state in which a nonattainment area designated under subpart 2 is located is also required to submit a state implementation plan meeting requirements dependant on the area's classification. 42 U.S.C. § 7511a.

19. States are required to submit demonstrations of attainment no later than three years after their dates of designation for nonattainment areas designated under subpart 2 that are classified as moderate or higher. 40 C.F.R. § 51.908(a) (2009).

20. Furthermore, states are also required to submit state implementation plans that contain provisions implementing new reasonable available control technology ("RACT") requirements for volatile organic compounds ("VOCs"), 42 U.S.C. § 7511a(b)(2), and nitrogen oxides ("NOx"), 42 U.S.C. § 7511a(f), for nonattainment areas designated under subpart 2 that are classified as moderate or higher. *See* 40 C.F.R. § 51.912(a)(1) (2009).

21. States that contain nonattainment areas designated under subpart 2 and classified as moderate or higher are required to submit state implementation plan provisions for reasonable further progress ("RFP") toward attainment for those areas. 42 U.S.C. §§ 7511a(b)(1) (moderate), 7511a(c)(2)(B) (serious), 7511a(d) (severe), and 7511a(e) (extreme).

22. EPA is required to determine whether a state implementation plan submittal is administratively complete. 42 U.S.C. § 7410(k)(1)(B). No later than six months after the date by which a state is required to submit a plan or plan revision, the Administrator shall determine whether the minimum criteria for the required submittal has been met by the state. *Id.*

23. If, six months after a state submits a state implementation plan, EPA has not made the completeness finding and has not found the submittal to be incomplete, the submittal is deemed administratively complete by operation of law. *Id*.

24. EPA must take final action on an administratively complete submittal by approving in full, disapproving in full, or approving in part and disapproving in part within 12 months of the date the submittal is deemed administratively complete. 42 U.S.C. § 7410(k)(2) – (4).

## VII.  CLAIMS FOR RELIEF

### CLAIM ONE

(EPA's failure to take final action on certain portions of state implementation plan submittals under 42 U.S.C. § 7410(k)(2) - (4).)

25. Plaintiff incorporates by reference paragraphs 1 through 24.

26. Either EPA or operation of law deemed Texas' state implementation plan submittals addressing 1997 8-hour ozone National Ambient Air Quality Standards nonattainment area requirements for the Dallas-Fort Worth area administratively complete on the dates listed below in Table 1 in the column labeled "Completeness Determination Date":

**TABLE 1**

| | **SIP Requirement** | **Completeness Determination Date** | **Deadline for EPA Approval or Disapproval** |
|---|---|---|---|
| 1 | Contingency Provisions for RFP Milestones 182(c)(9) | 7/24/2012 | 7/24/2013 |
| 2 | Ozone Attainment Demonstration – Serious | 7/19/2012 | 7/19/2013 |
| 3 | Clean Fuels for Fleets 182(c)(4) | 7/19/2012 | 7/19/2013 |
| 4 | RACT NOx for Major Sources | 12/15/2007 | 12/15/2008 |
| 5 | Enhanced Monitoring (PAMS) | 7/24/2012 | 7/24/2013 |
| 6 | RACT VOC CTG Auto and Light-Duty Truck Assembly Coatings | 7/19/2012 | 7/19/2013 |
| 7 | RACT VOC CTG Fiberglass Boat Manufacturing Materials | 7/19/2012 | 7/19/2013 |
| 8 | RACT VOC CTG Large Appliance Coatings | 7/19/2012 | 7/19/2013 |
| 9 | RACT VOC CTG Lithographic Printing Materials and Letterpress Printing Materials | 7/19/2012 | 7/19/2013 |
| 10 | RACT VOC CTG Metal Furniture coatings | 7/19/2012 | 7/19/2013 |
| 11 | RACT VOC CTG Miscellaneous Industrial Adhesives | 7/19/2012 | 7/19/2013 |
| 12 | RACT VOC CTG Miscellaneous Metal Products Coatings | 7/19/2012 | 7/19/2013 |
| 13 | RACT VOC CTG Plastic Parts Coatings | 7/19/2012 | 7/19/2013 |
| 14 | RFP VOC and NOx - Serious | 7/24/2012 | 7/24/2013 |

*See* http://www.epa.gov/air/urbanair/sipstatus/reports/tx_elembypoll.html#ozone-8hr__1997__631 (last viewed April 21, 2014).

27.     EPA has a mandatory duty under 42 U.S.C. § 7410(k)(2)-(4) to take final action by approving in full, disapproving in full, or approving in part and disapproving in part Texas' 1997 ozone nonattainment state implementation plan submittals addressing the above requirements by no later than the dates listed above in Table 1 in the column labeled "Deadline for EPA Approval or Disapproval."

28.     EPA has not taken final action by approving in full, disapproving in full, or approving in part and disapproving in part pursuant to 42 U.S.C. § 7410(k)(2)-(4) on any of the submittals listed above in Table 1.

29.     Thus, EPA has failed to perform its mandatory duties.

## CLAIM TWO

(EPA's failure to bump up Dallas Ft. Worth to severe pursuant to 42 U.S.C. §§ 7509(c)(1), (2) and 7511(b)(2)(A), (B).)

30.     Plaintiff incorporates by reference paragraphs 1 through 29.

31.     When EPA bumped the Dallas Ft. Worth nonattainment area up to a serious nonattainment area, EPA set its attainment date as June 15, 2013. 75 Fed. Reg. 79,302 (Dec. 20, 2010).

32.     Under 42 U.S.C. §§ 7509(c)(1) & 7511(b)(2)(A), EPA must determine by no later than six months after the attainment date, that is December 15, 2013 whether the Dallas 1997 8-hour ozone NAAQS serious nonattainment attained the 1997 8-hour ozone NAAQS by the June 15, 2013 attainment date.  Furthermore, pursuant to 42 U.S.C. §§ 7509(c)(2) & 7511(b)(2)(B), EPA is required to publish notice in the Federal Register no later than December 15, 2013 identifying whether the Dallas Ft. Worth nonattainment area attained the 1997 8-hour ozone NAAQS by its attainment date.

33. EPA failed to determine whether the Dallas 1997 8-hour ozone NAAQS serious nonattainment attained the 1997 8-hour ozone NAAQS by the June 15, 2013 attainment date and EPA failed to publish notice of such a determination in the Federal Register.

34. It is critical that EPA act promptly on this as the Dallas nonattainment area failed to attain by its attainment date because it has a 2010-2012 design value of 87 parts per billion (ppb). *See* http://www.epa.gov/airtrends/values.html,ozone detailed information, Table 1b.

### REQUEST FOR RELIEF

WHEREFORE, Sierra Club respectfully requests that the Court:

A. Declare that the Administrator is in violation of the Clean Air Act with regard to her failure to perform each mandatory duty listed above;

B. Issue a mandatory injunction requiring the Administrator to perform her mandatory duties by a certain date;

C. Retain jurisdiction of this matter for purposes of enforcing the Court's order;

D. Grant Sierra Club its reasonable costs of litigation, including attorneys' and expert witness fees; and

E. Grant such further relief as the Court deems proper.

Respectfully submitted,

/s Robert Ukeiley

_____
Robert Ukeiley
DDC Bar No. MD 14062
Law Office of Robert Ukeiley

                507 Center Street
                Berea, KY 40403
                Tel: (859) 986-5402
                Fax: (866) 618-1017
                rukeiley@igc.org

                Counsel for Sierra Club

Dated: May 20, 2014